**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

Chapter 7 Case

E & D LOGISTICS, INC

Case No. 8:03-bk-19372-MGW

    Debtor.

_____/

### NEWTEK'S OBJECTION TO THE REPORT AND NOTICE
### OF INTENTION TO SELL PROPERTY OF THE ESTATE

Creditor, Commercial Capital Corporation n/k/a Newtek ("Newtek"), by and through undersigned counsel, hereby files an objection to the Report and Notice of Intention to Sell Property of the Estate, and states as follows:

1.      On September 17, 2003, E & D Logistics, Inc. ("Debtor") filed for Chapter 7 bankruptcy protection ("Petition Date").

2.      On December 1, 2003, the Trustee filed the Report and Notice of Intention to Sell Property of the Estate – 53' Strickland Trailer ("Notice of Intent to Sell").

3.      Creditor, Commercial Capital objects to the Trustee's Notice of Intent to Sell, as the property the Trustee seeks to sell is secured by a security agreement and recorded UCC-1 held by Commercial Capital.

4.      On or about May 1, 2001, Edward A. Burke, as President of the Debtor, executed and delivered to Commercial Capital Corporation a certain loan agreement ("Loan Agreement") and note ("Note"), secured by a security agreement ("Security Agreement") (the Loan Agreement, Note, and Security Agreement collectively referred to as the "Loan Documents") on the commercial equipment, machinery, fixtures, inventory, accounts receivable and general

intangibles owned by the Debtor ("the Property") and more particularly described in the Security Agreement. True and correct copies of the Loan Agreement, Note, and Security Agreement are attached hereto as Exhibits A, B, and C, respectively.

5.　　The original principal amount of the Loan Documents was One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00).

6.　　In order to further secure its obligations to Commercial Capital Corporation, Edward A. Burke, as President of the Debtor, executed and delivered to Commercial Capital Corporation, a UCC-1 Financing Statement with E & D Logistics Inc. as debtor and Commercial Capital Corporation as secured party, which was filed with the Secretary of State, Division of Corporations on or about May 10, 2001, Document No. 200100102842 ("UCC-1"). The UCC-1 is attached hereto as Exhibit D.

7.　　Commercial Capital Corporation subsequently assigned its rights in the Loan Documents to Newtek.

8.　　Newtek, as the assignee of the Note, has a perfected security interest in the Property used as collateral to secure the Note.

9.　　In order to preserve its perfected security interest in the collateral, Newtek hereby files this Objection to the Report and Notice of Intention to Sell Property of the Estate, and respectfully requests this Court to set a hearing on the Notice of Intent to Sell prior to authorizing the sale of such property.

WHEREFORE, for the foregoing reasons, Newtek objects to the Report and Notice of Intention to Sell Property of the Estate and respectfully requests this Court to set a hearing on the Notice of Intent to Sell prior to authorizing the sale of such property.

Respectfully submitted,
**GUNSTER, YOAKLEY & STEWART, P.A.**
Counsel for Newtek
500 E. Broward Boulevard, Suite 1400
Fort Lauderdale, Florida 33394
Telephone: 954-462-2000
Facsimile: 954-523-1722

By: _____
Christian A. Petersen, Esq.
Fla. Bar No. 154105

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Newtek's Objection to the Report and Notice of Intention to Sell Property of the Estate, has been furnished to the parties on the attached service matrix via U.S. Mail this _15th_ day of January, 2004.

By: _____
Christian A. Petersen, Esq.

# SERVICE MATRIX

Andrew S. Forman, Esquire
Andrew S. Forman, P.A.
3355 W. Bearss Ave.
Tampa, FL 33618
**Counsel for E & D Logistics, Inc.**


E & D Logistics, Inc.
PO Box 20671
Tampa, FL 33622


Luis Martinez-Monfort, Esquire
Mills Paskert Divers, P.A.
100 North Tampa St.
Suite 2010
Tampa, FL 33602
**Counsel for Integrated Transportation
& Logistics, Inc.**


John S Schoene, Esquire
John S Schoene PA
100 East Sybelia Avenue #205
Maitland, FL 32751
**Counsel for Transport Funding**


United States Trustee - TPA7
Timberlake Annex, Suite 1200
501 E. Polk Street
Tampa, FL 33602

## LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement") is made May ⌴⌴, 2001 between **E&D Logistics, Inc.** ("Borrower") and COMMERCIAL CAPITAL CORPORATION ("Lender"), as identified in the attached Authorization issued by the U.S. Small Business Administration ("SBA") to lender, dated April 24, 2001 ("Authorization").

SBA has authorized a guaranty of a loan from Lender to Borrower for the amount and under the terms stated in the attached Authorization ("the Loan").

In consideration of the promises in this Agreement and for other good and valuable consideration, Borrower and Lender agree as follows:

1. Subject to the terms and conditions of the Authorization and SBA's Participating Lender Rules as defined in the Guarantee Agreement between Lender and SBA, Lender agrees to make the Loan if Borrower complies with the following "Borrower Requirements". Borrower must:

   a. Provide Lender with all certificates, documents or other information Lender requests or is required by the Authorization to obtain from Borrower or any third party;

   b. Execute a note and any other documents required by Lender;

   c. Do everything necessary for Lender to comply with the terms and conditions of the Authorization;

   d. Comply with all terms and conditions of the note, the Borrower's Certification and all other documents requested by Lender.

2. The terms and conditions of this Agreement:

   a. Are binding on Borrower and Lender and their successors and assigns; and

   b. Will remain in effect after the closing of the loan.

3. Failure to abide by any of the Borrower Requirements will constitute an event of default under the note and other loan documents.

**SIGNATURES ON NEXT PAGE**

**EXHIBIT A**

**Borrower:**
**E&D LOGISTICS, INC.**

By: _Edward A. Burke_
        Edward A. Burke, President


**LENDER:**

**COMMERCIAL CAPITAL
CORPORATION**

BY:

Its: ROBERT S. _____
CHIEF CREDIT OFFICER

F:\CORP\commcap\E&D\doc\loan agreement.wpd



U.S. Small Busine. Administration

# AUTHORIZATION
# (SBA GUARANTEED LOAN)

| SBA Loan # | LDP 446230 4005 |
|---|---|
| SBA Loan Name | E & D Logistics, Inc. |
| Approval Date | 04-24-01 |

Lender:

Commercial Capital Corporation
Elena Mullahey
25 West 43rd Street  Suite 900
New York, NY 10036

U. S. Small Business Administration (SBA):

Hazard LowDoc Processing Center
262 Black Gold Boulevard
Hazard, KY 41701-

SBA approves, under Section 7(a) of the Small Business Act as amended, Lender's application, received 04/20/2001, for SBA to guarantee 85% of a loan ("Loan") in the amount of $150,000.00 to assist:

Borrower:

1.  E & D Logistics, Inc.
    6026 Jetport Industrial Boulevard
    Tampa, FL 33634

All requirements in the Authorization which refer to Borrower also apply to any Co-Borrower.

A.  **THE GUARANTEE FEE IS $2,550.00.** Lender must pay the guarantee fee within 90 days of the date of this Authorization.  Failure to timely pay the guarantee fee will result in cancellation of the SBA guarantee.  The 90-day deadline may not be extended.  Lender must send the guarantee fee to the Small Business Administration, Denver, CO 80259-0001.  The remittance check should show the Loan number.  No part of the guarantee fee is refundable if Lender has made any disbursement. Lender may collect this fee from Borrower after initial disbursement of Loan.  Borrower may use Loan proceeds to reimburse Lender for the guarantee fee.

B.  **ONGOING SERVICING FEE** - Lender agrees to pay an ongoing fee equal to one-half of one percent per year of the guaranteed portion of the outstanding balance.  Lender may not charge this fee to Borrower.

C.  **IT IS LENDER'S SOLE RESPONSIBILITY TO :**

1.  Close the Loan in accordance with the terms and conditions of this Authorization.

2.  Obtain valid and enforceable Loan documents, including obtaining the signature or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.

SBA Loan Number: LDP 446230 4005
SBA Loan Name:  E & D Logistics, Inc.

Page 1
(7a Wizard 3.0)

3. Retain all Loan closing documents. Lender must submit these documents, along with other required documents, to SBA for review if Lender requests SBA to honor its guarantee on the Loan, or at any time SBA requests the documents for review.

## D. REQUIRED FORMS

1. Lender may use its own forms except as otherwise instructed in this Authorization. Lender must use the following SBA forms for the Loan:

> SBA Form 147, Note
> SBA Form 1050, Settlement Sheet, for each disbursement
> SBA Form 159, Compensation Agreement, for each representative
> SBA Form 2004, Lender's Certification
> SBA Form 722, Equal Opportunity Poster
> SBA Form 793, Notice to New Borrowers
> SBA Form 148, Guarantee

2. Lender may use computer-generated versions of mandatory SBA Forms, as long as these versions are exact reproductions.

3. Lenders must submit completed SBA Forms 159 and 2004 for non-PLP loans to the SBA immediately after final disbursement.

## E. CONTINGENCIES - SBA issues this Authorization in reliance on representations in the Loan application, including supporting documents. The guarantee is contingent upon Lender :

1. Having and complying with a valid SBA Loan Guarantee Agreement (SBA Form 750 or SBA Form 750B for short-term loans) and any required supplemental guarantee agreements, between Lender and SBA;

2. Complying with the current SBA Standard Operating Procedures (SOP);

3. Making initial disbursement of the Loan no later than 3 months, and completing disbursement no later than 6 months, from the date of this Authorization, unless SBA extends the time in writing;

4. Having no evidence since the date of the Loan application, or any preceding disbursement, of any unremedied adverse change in the financial condition, organization, operations, or fixed assets of Borrower which would warrant withholding or not making any further disbursement, and;

5. Satisfying all of the conditions in this Authorization.

## F. NOTE TERMS :

1. **Maturity:** This Note will mature in 10 years from date of Note.

2.  **Repayment Terms**: Lender must insert onto SBA Note, Form 147, to be executed by Borrower, the following repayment terms, without modification. Lender must complete all blank terms on the Note at time of closing:

> The interest rate on this Note will fluctuate. The initial interest rate is 10.750% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.75%.

> Borrower must pay principal and interest payments of $2,045.00 every month, beginning one month from the month this Note is dated; payments must be made on the _____ calendar day in the months they are due.

> Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

> The interest rate will be adjusted monthly (the "change period").

> The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

> The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change. The initial interest rate must remain in effect until the first change period begins.

> Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

> If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

> All remaining principal and accrued interest is due and payable 10 years from date of Note.

> Late Charge : If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment.

## G. USE OF PROCEEDS

1.  $150,000.00 to purchase the business known as Integrated Transportation & Logistics, Inc..

All amounts listed above are approximate. Lender must document that Borrower used the loan proceeds for the purposes stated in this Authorization.

Lender may not disburse Loan proceeds solely to pay the guarantee fee. Lender may disburse to Borrower, as working capital only, funds not spent for the listed purposes as long as these funds do not exceed 10% of the specific purpose authorized or $10,000.00, whichever is less. An Eligible Passive Company may not receive working capital funds.

Lender must complete SBA Form 1050, Settlement Sheet, for each disbursement and retain these forms in its Loan file.

## H. COLLATERAL CONDITIONS

Lender must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions:

1. **First Perfected Security Interest, subject to no other liens, in the following personal property** (including any proceeds and products), whether now owned or later acquired, wherever located: Equipment; Inventory; Instruments; Chattel Paper; General Intangibles;

   a. Lender must obtain a written agreement from all Lessors (including sublessors) agreeing to: (1) Subordinate to Lender Lessor's interest, if any, in this property; (2) Provide Lender written notice of default and reasonable opportunity to cure the default; and (3) Allow Lender the right to take possession and dispose of or remove the collateral.

   b. Lender must obtain a list of all equipment and fixtures that are collateral for the Loan. For items with a unit value of $500 or more, the list must include a description and serial number, if applicable.

   c. Lender must obtain an appropriate Uniform Commercial Code lien search evidencing all required lien positions. If UCC search is not available, another type of lien search may be substituted.

2. **Guarantee on SBA Form 148**, by Edward Burke, resident in Florida.

   Secured by :

   a. **Third Mortgage (including water rights and assignment of rents) on land and improvements** located at 7150 Quail Hollow Boulevard, Wesley Chapel, FL. This property is residential.
      (1) Subject only to prior lien(s) as follows:
          (a) First: Countrywide in the amount of $132,127.00
          (b) Second: Countrywide in the amount of $16,444.00
      (2) Evidence of title and priority of lien must be based upon :
          (a) Title and/or Lien Search or other evidence of proper ownership and lien position.

The following language must appear in all lien instruments including Mortgages, Deeds of Trust, and Security Agreements:

*"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

b) *Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*


## I. ADDITIONAL CONDITIONS

### 1. Insurance Requirements

Prior to disbursement, Lender must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

a. **Flood Insurance.** If FEMA Form 81-93 reveals that any portion of the collateral is located in a special flood hazard zone, Lender must require Borrower to obtain Federal flood insurance, or other appropriate special hazard insurance, in amounts equal to the lesser of the insurable value of the property or the maximum limit of coverage available. (Borrower will be ineligible for any future SBA disaster assistance or business loan assistance if Borrower does not maintain any required flood insurance for the entire term of the Loan.)

b. **Real Estate Hazard Insurance** coverage on all real estate that is collateral for the Loan in the amount of the full replacement cost. If full replacement cost insurance is not available, coverage should be for maximum insurable value. Insurance coverage must contain a <u>MORTGAGEE CLAUSE</u> (or substantial equivalent) in favor of Lender. This clause must provide that any act or neglect of the mortgagor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

c. **Personal Property Hazard Insurance** coverage on all equipment, fixtures or inventory that is collateral for the Loan, in the amount of full replacement costs. If full replacement cost insurance is not available, coverage should be for maximum insurable value. Insurance coverage must contain a <u>LENDER'S LOSS PAYABLE CLAUSE</u> in favor of Lender. This clause must provide that any act or neglect of the debtor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

d. **Life Insurance**, satisfactory to Lender:

(1) on the life of Edward A Burke in the amount of $150,000.00.

Lender must obtain a collateral assignment of each policy with Lender as assignee which provides that Insurer will give Lender at least 30 days written notice of payment default and a right to cure. Lender must also obtain acknowledgment of the assignment by the Home Office of the Insurer.

SBA Loan Number: LDP 446230 4005
SBA Loan Name: E & D Logistics, Inc.

Page 5
(7a Wizard 3.0)

2. **Borrower, Guarantor and Operating Company Documents**

    a.    Prior to closing, Lender must obtain from Borrower, Guarantor and Operating Company a current copy of each of the following as appropriate:

        (1)  **Corporate Documents** - Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

        (2)  **Limited Liability Company (LLC) Documents** - Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

        (3)  **General Partnership Documents** - Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

        (4)  **Limited Partnership Documents** - Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

        (5)  **Limited Liability Partnership (LLP) Documents** - Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

        (6)  **Trustee Certification** - A Certificate from the trustee warranting that:

            (a)  The trust will not be revoked or substantially amended for the term of the Loan without the consent of SBA;

            (b)  The trustee has authority to act;

            (c)  The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;

            (d)  If the trust is an Eligible Passive Company, the trustee has authority to lease the property to the Operating Company;

            (e)  There is nothing in the trust agreement that would prevent Lender from realizing on any security interest in trust assets;

            (f)  The trust agreement has specific language confirming the above; and

            (g)  The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors.

        (7)  **Trade Name** – Documentation that Borrower has complied with state requirements for registration of Borrower's trade name (or fictitious name), if one is used.

3. **Operating Information**

   **Prior to any disbursement of Loan proceeds, Lender must obtain:**

   a. **Verification of Financial Information** – Lender must submit IRS Form 4506 to the Internal Revenue Service to obtain federal income tax information on Borrower or, if the Borrower is an EPC, then the Operating Company for the last 3 years (unless Borrower or Operating Company is a start-up business). If the business has been operating for less than 3 years, lender must obtain the information for all years in operation. This requirement does not include tax information for the most recent fiscal year if the fiscal year-end is within 6 months of the application date. Lender must compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan. Borrower must resolve any significant differences to the satisfaction of Lender and SBA. Failure to resolve differences may result in cancellation of the Loan.

   b. If Lender does not receive a response from the IRS within 10 business days of submitting the SBA version of IRS Form 4506, then Lender may disburse prior to completing this verification provided that Lender has submitted IRS Form 4506 to the IRS no later than 10 business days from the date of this Authorization. Lender must still perform the verification and resolve any significant differences discovered.

   c. **Authority to Conduct Business** – Evidence that the Borrower has an Employer Identification Number and all insurance, licenses, permits and other approvals necessary to lawfully operate the business.

   d. **Flood Hazard Determination** – A completed Standard Flood Hazard Determination (FEMA Form 81-93).

   e. **Lease** - Current lease(s) on all business premises where collateral is located with term, including options, at least as long as the term of the Loan.

4. **Standby Agreement**

   a. Lender to obtain Standby Creditor's Agreement from JoAnn Citro, for $75,000.00, plus all accrued and future interest (Standby Debt). Monthly payments of interest on Standby Debt, at 10.50% per year, may be made if Borrower is not in default under the Note. Standby Creditor must subordinate any lien rights in collateral securing the Loan to Lender's rights in the collateral, and take no action against Borrower or any collateral securing the Standby Debt without Lender's consent. Lender must attach a copy of the Standby Note evidencing the Standby Debt to the Standby Creditor's Agreement. Lender may use its own form or SBA Form 155.

5. **Certifications and Agreements**

   a. Lender must require Borrower to certify that:

      (1) **Receipt of Authorization** - Borrower has received a copy of this Authorization and SBA Form 793, Notice to New SBA Borrower, from Lender; and acknowledges that:
         (a) The Authorization is not a commitment by Lender to make a loan to Borrower;
         (b) The Authorization is between Lender and SBA and creates no third party rights or benefits to Borrower;
         (c) The Note will require Borrower to give Lender prior notice of intent to prepay.

    (d) If Borrower defaults on Loan, SBA may be required to pay Lender under the SBA guarantee. SBA may then seek recovery of these funds from Borrower. Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or defenses available under local law to defeat, modify or otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.

    (e) Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligations of any personal guarantor of the Note.

  (2) **Child Support -** No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

  (3) **Current Taxes -** Borrower is current on all federal, state, and local taxes, including but not limited to income taxes, payroll taxes, real estate taxes, and sales taxes.

b. Lender must require Borrower to certify that it will:

  (1) **Reimbursable Expenses-** Reimburse Lender for expenses incurred in the making and administration of the Loan.

  (2) **Books, Records, and Reports-**
    (a) Keep proper books of account in a manner satisfactory to Lender;
    (b) Furnish year-end statements to Lender within 120 days of fiscal year end;
    (c) Furnish additional financial statements or reports whenever Lender requests them;
    (d) Allow Lender or SBA, at Borrower's expense, to:
      [1] Inspect and audit books, records and papers relating to Borrower's financial or business condition; and
      [2] Inspect and appraise any of Borrower's assets; and
      [3] Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower, upon request by Lender or SBA.

  (3) **Equal Opportunity -** Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public, and comply with the requirements of SBA Form 793, Notice to New SBA Borrowers.

  (4) **American-made Products -** To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

  (5) **Taxes -** Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

c. Lender must require Borrower to certify that it will not, without Lender's prior written consent:

  (1) **Distributions-** Make any distribution of company assets that will adversely affect the financial condition of Borrower.

  (2) **Ownership Changes -** Change the ownership structure or interests in the business during the term of the Loan.

  (3) **Transfer of Assets -** Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.



U.S. Small Business Administration

# NOTE

CCC# 2226-01

| SBA Loan # | LDP 446230 4005 |
|---|---|
| SBA Loan Name | E&D LOGISTICS, INC. |
| Date | MAY 1, 2001 |
| Loan Amount | $150,000.00 |
| Interest Rate | PRIME PLUS 2.75% FLOATING |
| Borrower | E&D LOGISTICS, INC. |
| Operating Company | N/A |
| Lender | COMMERCIAL CAPITAL CORPORATION |

## 1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of One Hundred Fifty Thousand and 00/l00 Dollars, ($150,000.00) interest on the unpaid principal balance, and all other amounts required by this Note.

## 2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the Unites States of America.

**EXHIBIT B**

note.doc

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

This Note will mature in 10 years from the date of Note.

The interest rate on this Note will fluctuate. The initial interest rate is 10.750% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.75%.

Borrower must pay one payment of interest only on the disbursed principal balance one month from the month this Note is dated; payment must be made on the first calendar day in the month it is due.

Borrower must pay principal and interest payments of $2,045.00 every month beginning two months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted monthly (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal, on the next business day.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change. The initial interest rate must remain in effect until the first change period begins.

Lender must adjust the payment amount at least annually as needed to amortize the principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

All remaining principal and accrued interest is due and payable 10 years from the date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment.

4.  RIGHT TO PREPAY:

Borrower may prepay this Note.  Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

    A.  Give Lender written notice;

    B.  Pay all accrued interest; and

    C.  If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph B.  If Borrower does not prepay within 60 days from the date Lender receives the notice, Borrower must give Lender a new notice.

5.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

    A.    Fails to do anything required by this Note and other Loan Documents;

    B.    Defaults on any other loan with Lender;

    C.    Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

    D.    Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

    E.    Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

    F.    Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

    G.    Fails to pay any taxes when due;

    H.    Becomes the subject of a proceeding under any bankruptcy or insolvency law;

    I.    Has a receiver or liquidator appointed for any part of their business or property;

    J.    Makes an assignment for the benefit of creditors;

    K.    Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

    L.    Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent;  or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

6. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

7. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan
Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

8. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing    liens, and other purposes. By using such

procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 9. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

## 10. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

## 11. STATE-SPECIFIC PROVISIONS:

NONE

12.  BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

WITNESS:                              E&D LOGISTICS, INC.

_(signature)_                    By: _(signature)_
                                     Edward A. Burke, President

STATE OF FLORIDA          )
COUNTY OF                 )

The foregoing instrument was acknowledged before me this _1st_ day of May, 2001 by **EDWARD A. BURKE**, as **PRESIDENT** of **E&D LOGISTICS, INC.** a Florida corporation, on behalf of the corporation.  He is personally known to me or has produced _Dan his_ as identification.

_(signature)_
Notary Public
Print Name: _Neil S. Schecht_

F:\CORP\commcap\E&D\doc\note.wpd

NEIL S. SCHECHT
MY COMMISSION # CC 687466
EXPIRES: October 8, 2001
Bonded Thru Notary Public Underwriters

"The guaranteed portion of the outstanding principal balance of this note has been transferred to a Registered Holder for value."

_(signature)_

WILLIAM K. PHILPOT
COMMERCIAL CAPITAL CORPORATION
DATE:   5 / 4 / 01

| U. S. Small Business Administration |
| --- |

# SECURITY AGREEMENT

1. **E&D LOGISTICS, INC.,** (the "Debtor"), for value received hereby grants **COMMERCIAL CAPITAL CORPORATION**, 25 West 43rd Street, Suite 900, New York, New York 10036 (hereinafter called "Secured Party"), a security interest in the property described below (hereinafter collectively called "Collateral") to secure the payment of the principal and interest on and all obligations under a note (hereinafter called the "Note"), dated May ⎿T, 2001, of the Debtor payable to the order of the Secured Party, in the principal amount of One Hundred Fifty Thousand and 00/100s Dollars ($150,000.00), all renewals and extensions of the Note, and all costs, expenses, advances and liabilities which may be made or incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note and in the protection, maintenance and liquidation of the security interest hereby granted with interest at the maximum legal rate on such costs, expenses, advances and liabilities. The Note and all other obligations secured hereby are herein collectively called the "Liabilities."

2. The Collateral in which this security interest is granted is all of the Debtor's property described below in reference to which an "X" or checkmark has been placed in the box applicable thereto, together with all the proceeds and products therefrom. If two such boxes are so marked, the security interest so designated secures the purchase money from the loan used by the Debtor to acquire title to the Collateral.

    X    X    A.    All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired wherever located, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith, including but not limited to the items listed on the attached Exhibit A and/or used in the operation of the business at 6026 Jetport Industrial Blvd., Tampa, Florida 33634.

    ☐    ☐    B.    All passenger and commercial motor vehicles registered for use upon public highways or streets, now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts, equipment and tools belonging thereto or for use in connection therewith.

    X    X    C.    All inventory, raw materials, work in process and supplies now owned or hereafter acquired.

    X    X    D.    All accounts receivable now outstanding or hereafter arising.

    X    X    E.    All contract rights, instruments, chattel paper and general intangibles now in force or hereafter acquired.

3. Debtor shall not transfer, sell or assign Debtor's interest in the Collateral nor permit any other security interest to be created thereon without Secured Party's prior written approval, except that Debtor may sell the inventory listed in Paragraph 2.c. hereof in the ordinary course of business on customary terms and at usual prices and may collect as Secured Party's agent sums due on accounts receivable and contract rights listed in Paragraphs 2.d. and 2.e. until advised otherwise by Secured Party.

4. Debtor shall keep, store or regularly garage all Collateral at locations approved by Secured Party in writing.

**EXHIBIT C**

5.     Debtor shall not     .duct business under any other name *    * that given above nor change or reorganize the type of business entity under which it does business except upon prior written approval of Secured Party. If such approval is given, Debtor guarantees that all documents, instruments and agreements demanded by Secured Party shall be prepared and filed at Debtor's expense before such change of name or business entity occurs.

6.     Debtor shall pay the filing and recording costs of any documents or instruments necessary to perfect, extend, modify, or terminate the security interest created hereunder, as demanded by Secured Party.

7.     Debtor shall maintain all Collateral in good condition, pay promptly all taxes, judgments, or changes of any kind levied or assessed thereon, keep current all rent due on premises where Collateral is located, and maintain insurance on all Collateral against such hazards, in such amounts and with such companies as Secured Party may demand, all such insurance policies to be in the possession of Secured Party and to contain a Lender's Loss Payable Clause naming Secured Party in a manner satisfactory to Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon, and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary to accomplish such collections, and any persons or entities making payments to Secured Party under the terms of this Paragraph are hereby relieved absolutely from any obligation to see to the application of any sums so paid.

8.     Debtor shall be in default hereunder if Debtor fails to perform any of the liabilities imposed hereby or any other obligation required by the various instruments or papers evidencing or securing this loan, or if the full balance of the loan becomes immediately payable under the terms of such instruments, either automatically or by declaration of the Secured Party. In the event of any default, Secured Party may, in its own discretion, cure such default and, if it does so, any expenditures made for such purpose shall be added to the principal of the Note.

9.     In the event of default, Debtor shall assemble and make available all Collateral at any place designated by Secured Party. Debtor acknowledges being advised of a constitutional right to a court notice and hearing to determine whether, upon default, there is probable cause to sustain the validity of the Secured Party's claim and whether the Secured Party is entitled to possession of the Collateral and being so advised, Debtor hereby voluntarily gives up, waives and surrenders any right to a notice and hearing to determine whether there is probable cause to sustain the validity of Secured Party's claim. Any notices required pursuant to any state or local law shall be deemed reasonable if mailed by Secured Party to the persons entitled thereto at their last known addresses at least ten days prior to disposition of the Collateral, and, in reference to a private sale, need state only that Secured Party intends to negotiate such a sale. Disposition of Collateral shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the community where the Collateral is located or by a private sale for a sum equal to or in excess of the liquidation value of the Collateral as determined by Secured Party.

10.     All rights conferred on Secured Party hereby are in addition to those granted to it by any state or local law or any other law. Failure or repeated failure to enforce any rights hereunder shall not constitute an estoppel or waiver of Secured Party's rights to exercise such rights accruing prior or subsequent thereto. Secured Party shall not be liable for any loss to Collateral in its possession, nor shall such loss diminish the debt due, even if the loss is caused or contributed to by Secured Party's negligence.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

IN WITNESS WHEREOF, **EDWARD A. BURKE**, as **PRESIDENT** of **E&D LOGISTICS, INC.**, has executed this Security Agreement this ___1st___ day of ___May___, 2001.

**E&D LOGISTICS, INC**

By: _Edward A. Burke_

Edward A. Burke, Its President

F:\CORP\commcap\E&D\doc\security.agr.wpd

SBA FORM 1059 (10-86) REF SOP 70 50

6026 Jet Port Industrial Blvd.
Tampa, Fl. 33634

## AssetList

| | |
|---|---|
| 1 | 1992  24ft International straight truck with lift gate |
| 1 | 1994 24ft Hino straight truck with lift gate |
| 1 | 1991 International tractor |
| 1 | 1988 53 ft Mono Dry trailer |
| 1 | Data trac software-4 terminals-1 server-3 okidata printers   SERIAL NO. D436HUN2054 |
| 1 | Cannon NP 6030 Copier     SERAL NO.    F129300NCH00071 |
| 1 | Cannon NP 6650 II Copier    ''    ''    F126700N8N 00378 |
| 1 | Computer Desk |
| 1 | Electric time clock |
| 1 | Time clock rack |
| 1 | 5000lb propane fork lift     ''    ''    G138MC9065819 |
| 3 | Propane tank racks |
| 2 | Fork extensions |
| 1 | Electric pallet jack |
| 1 | Electric pallet jack charger |
| 1 | Single drum grabber |
| 1 | J-Bar |
| 1 | 4x4 pallet scale    ''    ''    18069 |
| 6 | Aluminum dock plates |
| 14 | pallet rack up-rites |
| 48 | Pallet rack cross beams |
| 2 | 6ft tables |
| 2 | Refrigerators |
| 3 | load locks |
| 8 | E-Track load locks |
| 1 | 100,000  btu electric heater |
| 1 | 8ft mobile roller stairs |
| 2 | 4ft carts |
| 1 | 3ft cart |
| 1 | soda machine |
| 2 | Pallet jacks |
| 3 | 2 wheelers |
| 1 | Battery Charger |

## Asset List

| | |
|---|---|
| *1* | *ATT Partner 8 line phone system with 4 phones* |
| *2* | *Office desk's with returns* |
| *3* | *Office desk's* |
| *4* | *Storage cabinets* |
| *3* | *Printer stands* |
| *1* | *Cherry wood executive desk* |
| *1* | *Cherry wood credenza* |
| *1* | *Cherry wood buffet* |
| *3* | *Executive chairs* |
| *1* | *Cherry wood end table* |
| *11* | *File cabinets* |
| *10* | *Office Chairs* |
| *2* | *Wall Maps* |
| | *Miscellanous-staplers, waste baskets. Ect* |

E & D Logistics, Inc.

By: _Edward A. Burke_

Edward A. Burke, President

Integrated Transport~~~~on & Logistics, Inc.
6026 Jet Port Industrial ~lvd.
Tampa, Fl.  33634

813 885 3969
fax813 885 4098

## AssetList

| Qty | Description | Value |
|---|---|---|
| 1 | 1992  24ft International straight truck with lift gate | 10,000.00 |
| 1 | 1994 24ft Hino straight truck with lift gate | 12,000.00 |
| 1 | 1991 International tractor | 14,000.00 |
| 1 | 1988 53 ft Mono Dry trailer | 4,000.00 |
| 1 | Data trac software-4 terminals-1 server-3 okidata printers | 60,000.00 |
| 1 | Cannon NP 6030 Copier | 1,000.00 |
| 1 | Cannon NP 6650 II Copier | 4,000.00 |
| 1 | Computer Desk | 100.00 |
| 1 | Electric time clock | 30.00 |
| 1 | Time clock rack | 5.00 |
| 1 | 5000lb propane fork lift | 5,000.00 |
| 3 | Propane tank racks | 60.00 |
| 2 | Fork extensions | 50.00 |
| 1 | Electric pallet jack | 500.00 |
| 1 | Electric pallet jack charger | 300.00 |
| 1 | Single drum grabber | 35.00 |
| 1 | J-Bar | 25.00 |
| 1 | 4x4 pallet scale | 1,500.00 |
| 6 | Aluminum dock plates | 1,200.00 |
| 14 | pallet rack up-rites | 700.00 |
| 48 | Pallet rack cross beams | 1,400.00 |
| 2 | 6ft tables | 20.00 |
| 2 | Refrigerators | 300.00 |
| 3 | load locks | 60.00 |
| 8 | E-Track load locks | 80.00 |
| 1 | 100,000  btu electric heater | 100.00 |
| 1 | 8ft mobile roller stairs | 25.00 |
| 2 | 4ft carts | 40.00 |
| 1 | 3ft cart | 10.00 |
| 1 | soda machine | 300.00 |
| 2 | Pallet jacks | 400.00 |
| 3 | 2 wheelers | 100.00 |
| 1 | Battery Charger | 50.00 |

*Asset List*

| | | |
|---|---|---|
| 1 | ATT Partner 8 line phone system with 4 phones | 3,000.00 |
| 2 | Office desk's with returns | 200.00 |
| 3 | Office desk's | 225.00 |
| 4 | Storage cabinets | 200.00 |
| 3 | Printer stands | 30.00 |
| 1 | Cherry wood executive desk | 200.00 |
| 1 | Cherry wood credenza | 100.00 |
| 1 | Cherry wood buffet | 100.00 |
| 3 | Executive chairs | 100.00 |
| 1 | Cherry wood end table | 50.00 |
| 11 | File cabinets | 550.00 |
| 10 | Office Chairs | 100.00 |
| 2 | Wall Maps | 50.00 |
| | Miscellanous staplers, waste baskets. Ect | 200.00 |

*Total*    122,495.00

CCC# 2226-01

State of Florida
UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM UCC-1 (REV.2000)
This Financing Statement is presented to a filing officer pursuant to the Uniform Commercial Code.

| 1. Debtor (Last Name First if an individual) | | 1e. Date of Birth or FEID |
|---|---|---|
| E&D Logistics, Inc. | | 59-3578921 |
| 1b. Mailing Address | 1c. City, State | 1d. Zip Code |
| 6026 Jetport Industrial Blvd. | Tampa, Florida | 33634 |
| 2. Additional Debtor or Trade Name (Last Name First if an individual) | | 2a. Date of Birth or FEID |
| 2b. Mailing Address | 2c. City, State | 2d. Zip Code |

| 3. Secured Party (Last Name First if an individual) | | |
|---|---|---|
| Commercial Capital Corporation | | |
| 3a. Mailing Address | 3b. City, State | 3c. Zip Code |
| 25 West 43rd Street, Suite 900 | New York, NY | 10036 |
| 4. Assignee of Secured Party (Last Name First if an individual) | | |
| 4a. Mailing Address | 4b. City, State | 4c. Zip Code |

5. This Financing Statement covers the following types or items of property [include description of real property on which located and owner of record when required. If more space is required, attach additional sheet(s)].

See attached Schedule 1

6. Check only if Applicable: ☒ Products of collateral are also covered. ☐ Proceeds of collateral are also covered. ☐ Debtor is transmitting utility.

7. Check appropriate box: ☒ All documentary stamps due and payable or to become due and payable pursuant to s.201.22 F.S., have been paid.
(one box must be marked) ☐ Florida Documentary Stamp Tax is not required.

8. In accordance with s.679.402(2) F.S., this statement is filed without the Debtor's signature to perfect a security interest in collateral:
☐ already subject to a security interest in another jurisdiction when it was brought into this state or debtor's location changed to this state.
☐ which is proceeds of the original collateral described above in which a security interest was perfected.
☐ as to which the filing has lapsed. Date filed _____ and previous UCC-1 file number _____
☐ acquired after a change of name, identity, or corporate structure of the debtor.

9. Number of additional sheets presented: 3

This Space for Use of Filing Officer

200100102842--8
-05/10/01--01038--012
*****34.00

FILED
01 MAY 10 AM 11:15
SECRETARY OF STATE
TALLAHASSEE FLORIDA

10. Name of Debtor
E&D Logistics, Inc.
By:
11. Signature(s) of Secured Party or if Assigned, by Assignee(s)

| 12. Return Copy to: | |
|---|---|
| Name | Bruce L. Gordon, Esq. |
| Address | Gordon, Silberman, Wiggins & Childs, P.C. |
| Address | 1400 SouthTrust Tower |
| City, State, Zip | Birmingham, Alabama 35203 |

5-10-01

STANDARD FORM - FORM UCC1 Approved by Secretary of State, State of Florida

EXHIBIT D

MAY-01-01 TUE 10:38 AM                    FAX NO.                    P. 02

CCC# 2226-01                                    SBA Loan No. LDP 44 8230 4005

## SCHEDULE I

The Collateral in which this security interest is granted is all of the Debtor's property described below, together with all the proceeds and products therefrom.

A.      All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired wherever located, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith, including but not limited to those items listed on attached Exhibit A and/or used in connection with the business conducted by the Debtor at 6026 Jetport Industrial Blvd., Tampa, Florida, 33634.

B.      All inventory, raw materials, work in process and supplies now owned or hereinafter acquired.

C.      All accounts receivable arising after May 1, 2001 and thereafter.

D.      All contract rights, documents, chattel papers, instruments, building and leasehold improvements and general intangibles now in force or hereafter acquired.

F:\CCC\RP\mmxxsp\F1&D\dot\Schedule,s.c.wpd

*6026 Jet Port Industrial Blvd.*
*Tampa, Fl. 33634*

EXHIBIT "A"

*AssetList*

| | |
|---|---|
| 1 | 1992  24ft International straight truck with lift gate |
| 1 | 1994 24ft Hino straight truck with lift gate |
| 1 | 1991 International tractor |
| 1 | 1988 53 ft Mono Dry trailer |
| 1 | Data trac software-4 terminals-1 server-3 okidata printers  SERIAL NO. D636HAN2001 |
| 1 | Cannon NP 6030 Copier    SERAI NO.  P1298OONEH00071 |
| 1 | Cannon NP 6650 II Copier   "   "   F126 700NON00878 |
| 1 | Computer Desk |
| 1 | Electric time clock |
| 1 | Time clock rack |
| 1 | 5000lb propane fork lift    "    "   G13PMC9065519 |
| 3 | Propane tank racks |
| 2 | Fork extensions |
| 1 | Electric pallet jack |
| 1 | Electric pallet jack charger |
| 1 | Single drum grabber |
| 1 | J-Bar |
| 1 | 4x4 pallet scale  ....    "   "   170069 |
| 6 | Aluminum dock plates |
| 14 | pallet rack up-rites |
| 48 | Pallet rack cross beams |
| 2 | 6ft tables |
| 2 | Refrigerators |
| 3 | load locks |
| 8 | E-Track load locks |
| 1 | 100,000  btu electric heater |
| 1 | 8ft mobile roller stairs |
| 2 | 4ft carts |
| 1 | 3ft cart |
| 1 | soda machine |
| 2 | Pallet jacks |
| 3 | 2 wheelers |
| 1 | Battery Charger |

Sent by:SUNBELT BIZ BROKERS  Apr-25-01 00:07am  From B13 6310523>  PAGE 5/ 5

*Integrated Transportation*

*Asset List*

| | |
|---|---|
| 1 | ATT Partner 8 line phone system with 4 phones |
| 2 | Office desk's with returns |
| 3 | Office desk's |
| 4 | Storage cabinets |
| 3 | Printer stands |
| 1 | Cherry wood executive desk |
| 1 | Cherry wood credenza |
| 1 | Cherry wood buffet |
| 3 | Executive chairs |
| 1 | Cherry wood end table |
| 11 | File cabinets |
| 10 | Office Chairs |
| 2 | Wall Maps |
| | Miscellanous-staplers, waste baskets. Ect |

E & D Logistics, Inc.

By: *Edward A. Burke*
Edward A. Burke, President